**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-cv-22783-BLOOM/Louis**

KATHRYN BIRREN and
MANDY BIRREN,

     Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
a Liberian corporation,

     Defendant.
_____/

## ORDER ON MOTION TO STRIKE AFFIRMATIVE DEFENSES

**THIS CAUSE** is before the Court upon Plaintiffs' Motion to Strike Defendant's Affirmative Defenses, ECF No. [16] ("Motion"), filed on October 14, 2020. Defendant filed a Response, ECF No. [19] ("Response"), to which Plaintiffs replied, ECF No. [20] ("Reply"). The Court has carefully considered the Motion, all opposing and supporting submissions, the record in the case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

### I. BACKGROUND

Plaintiffs initiated this maritime personal injury action against Defendant on July 7, 2020. ECF No. [1]. Plaintiffs filed their First Amended Complaint, ECF No. [8] ("Amended Complaint"), on September 18, 2020. The Amended Complaint asserts the following nine counts: Count I – Negligent Hiring and Retention; Count II – Negligent Supervision and Training; Count III – Negligent Failure to Warn of Dangerous Conditions; Count IV – Negligent Design, Installation, and/or Approval of the Subject Area and the Vicinity; Count V – Negligence Against

Defendant for the Acts of its Crewmembers Based on Vicarious Liability; Count VI – Negligent Failure to Inspect, Clean, Maintain, Repair, Remedy, and/or Take Other Reasonable Measures for the Safety of Plaintiffs; Count VII – Vicarious Liability Against Defendant for the Negligence of the Ship's Medical Staff; Count VIII – Apparent Agency as to Defendant for the Acts of the Ship's Medical Staff; and Count IX – Assumption of Duty as to Defendant for the Negligence of the Ship's Medical Staff. *See generally* ECF No. [8]. Moreover, on October 9, 2020, Defendant filed its Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint, ECF No. [15] ("Affirmative Defenses"). Defendant asserted twelve affirmative defenses and reserved its right to amend its Affirmative Defenses as more facts become known through the course of discovery.

Plaintiffs now move to strike seven of the Affirmative Defenses: the first, second, fifth, seventh, eighth, eleventh, and twelfth affirmative defenses. *See* ECF No. [16]. According to Plaintiffs, the affirmative defenses at issue assert bare conclusions, fail to allege any facts upon which the defenses are based, and fail to comply with the applicable pleading standards. Moreover, Plaintiffs conclude that the affirmative defenses are "legally insufficient, irrelevant, and/or immaterial and thus, should be stricken. In response, Defendant agrees to withdraw its seventh affirmative defense, but argues that the other challenged affirmative defenses provide the basic notice required by law, and relate directly to Plaintiffs' claims. Alternatively, Defendant requests that it be given leave to amend any affirmative defenses that are stricken.

## II. LEGAL STANDARD

An affirmative defense is a defense "that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters." *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 688, 671 (S.D. Fla. 2013). A defense that addresses a defect

in a party's claim or that fails to put the opposing party on notice of the nature of the defense is not a properly asserted affirmative defense. *Id.*

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," and grants courts broad discretion in making this determination. Fed. R. Civ. P. 12(f); *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318-19 (S.D. Fla. 2005) (citing *Williams v. Eckerd Family Youth Alt.*, 908 F. Supp. 908, 910 (M.D. Fla. 1995)). Under Rule 12(f), "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010) (internal quotation and citation omitted); *Action Nissan, Inc. v. Hyundai Motor Am.,* 617 F. Supp. 2d 1177, 1187 (M.D. Fla. 2008) (same); *see also Home Mgmt. Solutions, Inc. v. Prescient, Inc.*, No. 07-20608-CIV, 2007 WL 2412834, at *1 (S.D. Fla. Aug. 21, 2007) (same). Despite the Court's broad discretion, a motion to strike is considered a drastic remedy and is often disfavored. *See Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962));[1] *Fabing v. Lakeland Reg'l Med. Ctr., Inc.*, No. 8:12-cv-2624-T-33MAP, 2013 WL 593842, at *2 n.2 (M.D. Fla. 2013) (calling Rule 12(f) a "draconian sanction").

Even so, "an affirmative defense must be stricken when the defense is comprised of no more than 'bare-bones, conclusory allegations' or is 'insufficient as a matter of law.'" *Northrop & Johnson Holding Co., Inc. v. Leahy*, No. 16-cv-63008, 2017 WL 5632041, at *3 (S.D. Fla. Nov.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals of the Fifth Circuit issued prior to October 1, 1981.

22, 2017) (quoting *Adams*, 294 F.R.D. at 671; *Home Mgmt. Solutions, Inc.*, 2007 WL 2412834, at *2). "A defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law." *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002).

"Courts have developed two schools of thought regarding the pleading standard required for affirmative defenses, and the Eleventh Circuit has not yet resolved the split in opinion." *Ramnarine v. CP RE Holdco 2009-1, LLC*, No. 12-61716-CIV, 2013 WL 1788503, at *1 (S.D. Fla. Apr. 26, 2013). Some courts have concluded that affirmative defenses are subject to the heightened pleading standard of Rule 8(a), as set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Moore v. R. Craig Hemphill & Assocs.*, No. 3:13-cv-900-J-39-PDB, 2014 WL 2527162, at *2 (M.D. Fla. May 6, 2014); *see also Adams v. JP Morgan Chase Bank, N.A.*, No. 3:11-cv-337-J-37MCR, 2011 WL 2938467, at *2-3 (M.D. Fla. July 21, 2011). Other courts have held that affirmative defenses are subject to a less stringent standard under Rules 8(b) and 8(c), and that affirmative defenses need only "provide fair notice of the nature of the defense and the grounds upon which it rests." *See*, *e.g.*, *Gonzalez v. Midland Credit Mgmt., Inc.*, No. 6:13-cv-1576-Orl-37TBS, 2013 WL 5970721, at *3 (M.D. Fla. Nov. 8, 2013); *Jackson v. City of Centreville*, 269 F.R.D. 661 (N.D. Ala. 2010); *Romero v. S. Waste Sys., LLC*, 619 F. Supp. 2d 1356, 1358 (S.D. Fla. 2009); *Sparta Ins. Co. v. Colareta*, No. 13-60579-CIV, 2013 WL 5588140, at *3 (S.D. Fla. Oct. 10, 2013); *Ramnarine*, 2013 WL 1788503, at *1.

The difference in language between Rule 8(a) and Rule 8(b) is subtle, but significant. While Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 8(b) merely requires that a party "state in short and plain terms its defenses to each

claim asserted against it." Fed. R. Civ. P. 8(a) and (b). In plain terms, the language of Rule 8(a) requires the party to "show" that they are entitled to relief, while Rule 8(b) does not. *See Moore*, 2014 WL 2527162, at *2 ("Whereas [Rule 8's] pleading provision uses, 'showing,' its response and affirmative-defense provisions use, 'state,' and *Iqbal*'s and *Twombly*'s analyses relied on 'showing' "); *Ramnarine*, 2013 WL 1788503, at *3 (explaining that "the difference in the language between Rule 8(a) and Rules 8(b) and (c) requires a different pleading standard for claims and defenses"). Comparable to Rule 8(b), Rule 8(c) requires that a party "must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). "[T]he Eleventh Circuit has stressed providing notice as the purpose of Rule 8(c): '[t]he purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it.'" *Jackson v. City of Centreville*, 269 F.R.D. 661, 662 (N.D. Ala. 2010) (quoting *Hassan v. USPS*, 842 F.2d 260, 263 (11th Cir. 1988)).

In this Court's view, affirmative defenses are not subject to the heightened pleading standard elucidated in *Twombly* and *Iqbal*. The straightforward construction of Rule 8 delineates different standards for pleadings generally, and those applicable to defenses. *See* Fed. R. Civ. P. 8. As noted by the Middle District of Alabama, "to artificially supply Rules 8(b)(1) and 8(c)(1) with the unique language of Rule 8(a)(2) requiring a 'showing' is to contravene well-established principles of statutory construction, which have been found applicable to interpreting the Federal Rules of Civil Procedure." *E.E.O.C. v. Joe Ryan Enters., Inc.*, 281 F.R.D. 660, 663 (M.D. Ala. 2012) (citing *Bus. Guides v. Chromatic Comms. Enter., Inc.*, 498 U.S. 533, 540-41 (1991)). Furthermore, "when one considers that a defendant must answer the complaint within 21 days, imposing a different standard for defenses is not unfair." *Floyd v. SunTrust Banks, Inc.*, No. 1:10-cv-2620-RWS, 2011 WL 2441744, at *8 (N.D. Ga. June 13, 2011).

III. DISCUSSION

   A. **First Affirmative Defense**

Defendant's First Affirmative Defense states:

> Plaintiffs' own negligence was the sole proximate cause of their injuries and damages, and as such any damages are barred as a matter of law. Alternatively, Plaintiffs' own negligence contributed to the subject incident and their injuries, and therefore, any award to the Plaintiffs must be reduced pursuant to the principles of comparative negligence.

ECF No. [15] at 14.

Plaintiffs contend that this affirmative defense should be stricken because it fails to plead even minimum facts as to how these defenses might be applicable. *See Alhassid v. Bank of Am., N.A.*, No. 14-cv-20484, 2015 WL 11216747, at *3 (S.D. Fla. Jan. 27, 2015) (denying motion to strike "boilerplate but well-recognized" defenses that "lack factual particularity" (citing *Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, 2013 WL 4496510, at *4-5 (S.D. Fla. Aug. 22, 2013))). Defendant, however, argues that this defense sufficiently apprises Plaintiffs of its intent to raise the issue of Plaintiffs' comparative fault and thus should not be stricken. The Court agrees. "This affirmative defense is essentially a contributory or comparative negligence defense; [] which is [] specifically enumerated in Rule 8(c)(1)." *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687-CIV, 2017 WL 7792720, at *7 (S.D. Fla. Aug. 18, 2017), *report and recommendation adopted*, No. 16-24687-CIV, 2017 WL 7803805 (S.D. Fla. Sept. 27, 2017). Thus, the Court will not strike Defendant's First Affirmative Defense because it is not so deficient that it would warrant such a drastic remedy. *See Kinsman v. Winston*, No. 6:15-cv-696-Orl-22GJK, 2015 WL 12839267, at *8 (M.D. Fla. Sept. 15, 2015); *see also Iskandar v. Royal Caribbean Cruises, Ltd.*, No. 18-cv-23812, 2018 WL 7463362, at *1 (S.D. Fla. Nov. 20, 2018) (interpreting a similar affirmative defense to allege only a comparative negligence theory); *Niagara Distributors, Inc. v. N. Ins. Co. of New York*, No. 10-61113-CIV, 2011 WL 13096637, at *1 (S.D. Fla. Apr. 11, 2011) (a motion to strike

is "a drastic remedy that is generally disfavored and motions to strike affirmative defenses should be denied unless it is clear that the defenses could not succeed under any circumstances."). Accordingly, Plaintiffs' Motion is denied as to Defendant's First Affirmative Defense.

### B. Second Affirmative Defense

Defendant's Second Affirmative Defense alleges that "[t]his action is governed by and subject to the terms, limitations, and conditions contained within the contract for passage and the Defendant adopts and incorporates same in its entirety to its answer by reference." ECF No. [15] at 14. Plaintiffs challenge this affirmative defense because it fails to set forth any additional facts in support. Defendant responds that the defense raises the existence of the terms, limitations, and conditions in the cruise ticket contract, which is sufficient to provide Plaintiffs with notice of the asserted defenses.

It is worth noting, however, that "[l]imitations of liability in cruise-ship tickets are not enforceable against negligence claims. *Johnson v. Royal Caribbean Cruises, Ltd.*, 449 F. App'x 846, 848 (11th Cir. 2011). Although other provisions, like venue, are enforceable, those provisions are irrelevant as to Defendant's liability and therefore cannot serve as affirmative defenses." *Iskandar*, 2018 WL 7463362, at *2; *see also Barrios v. Carnival Corp.*, No. 19-20534-CIV, 2019 WL 1876792, at *2 (S.D. Fla. Apr. 26, 2019) ("Rejecting a defendant's affirmative defense seeking waiver of liability based on the terms of the ticket contract as being "wholly irrelevant and void, as no part of the ticket contract may be used by Defendant to waive liability for negligence." (citing *Johnson*, 449 F. App'x at 848)). As such, Plaintiffs' Motion is granted on this point and the Second Affirmative Defense is stricken.

### C. Fifth Affirmative Defense

In its Fifth Affirmative Defense, Defendant alleges that:

> Plaintiffs' injuries, illness and/or medical condition, if any, were pre-existing. In the alternative, if any pre-existing injury, illness or condition was aggravated by any alleged incident herein, Plaintiffs are only entitled to reimbursement for the degree of aggravation, and any recovery herein must be reduced and limited to that degree of aggravation.

ECF No. [15] at 14. Plaintiffs, in challenging this defense, assert both that it fails to allege sufficient facts and that, as a matter of law, this defense misstates the law regarding pre-existing conditions, citing to the language of Florida Jury Instruction 501.5(a) as the authority on pre-existing conditions. Defendant responds that the Florida Jury Instruction provision is inapplicable here and that, in order to plead more facts in support of this defense, it must be allowed to conduct discovery to obtain Plaintiffs' medical records. Thus, Defendant argues that the Fifth Affirmative Defense should not be stricken.

A review of the defense here makes it clear that it raises a question of causation—i.e., whether Plaintiffs' injuries were caused by pre-existing conditions or by Defendant. *See Najmyar v. Carnival Corp.*, No. 1:17-cv-22448, 2017 WL 7796327, at *3 (S.D. Fla. Aug. 28, 2017). "[G]iven the appropriate pleading standard for affirmative defenses, because the Fifth Affirmative [D]efense provides the Plaintiff[s] with fair notice of the defense Defendant intends to raise, e.g., the presence of a pre-existing injury, the Fifth Affirmative Defense should not be stricken." *Lebron*, 2017 WL 7792720, at *5; *see also Sembler Family P'ship No. 41, Ltd. v. Brinker Fla., Inc.*, No. 8:08-cv-1212-T-24MAP, 2008 WL 5341175, at *4 (M.D. Fla. Dec. 19, 2008) (rejecting argument that the affirmative defense should be stricken as a bare bones, conclusory allegation where the allegations in the defense were sufficient to put the plaintiff on notice of the defense).

Moreover, "[t]he evidence to support this defense would, if it exists at all, be largely, if not exclusively, from Plaintiffs' own medical records." *Incardone v. Royal Carribean Cruises, Ltd.*, No. 16-20924-CIV, 2019 WL 2709810, at *11 (S.D. Fla. June 28, 2019), *report and recommendation adopted*, No. 16-20924-CIV, 2019 WL 8989849 (S.D. Fla. Oct. 1, 2019).

"Through the discovery process both Parties no doubt will have the opportunity to uncover Plaintiff's pre-existing injuries, if any, and will be able to argue the relevance of those injuries to the action at bar." *Lebron*, 2017 WL 7792720, at *5. Accordingly, the Court will not strike the Fifth Affirmative Defense.

### D. Seventh Affirmative Defense

Defendant's Seventh Affirmative Defense states: "The Plaintiffs' claims are barred inasmuch as the Plaintiffs knew of the existence of any alleged danger complained of in the Complaint, realized and appreciated the possibility of injury as a result of the danger, and, having a reasonable opportunity to avoid it, voluntarily exposed themselves to it." ECF No. [15] at 15. Defendant agrees to withdraw this affirmative defense. As such, the Motion is granted as to Defendant's Seventh Affirmative Defense.

### E. Eighth Affirmative Defense

Additionally, Defendant's Eighth Affirmative Defense asserts the following:

> Plaintiffs' past medical expense damages are limited to those that are reasonable and necessary, including reduction for any amounts written off, not submitted and which Plaintiffs were not required to pay. Defendant is entitled to a set-off for any and all monies paid by third parties that are related in any way to the above styled action.

*Id.* Plaintiffs maintain that the Eighth Affirmative Defense must be stricken because it is insufficient as a matter of law. Specifically, Plaintiffs assert that the Eleventh Circuit's opinion in *Higgs v. Costa Crociere S.P.A., Co.*, 969 F.3d 1295 (11th Cir. 2020), "unambiguously held that set-offs for medical bill 'write offs' are improper[.]" ECF No. [16] at 7.[2] Conversely, Defendant explains that this defense was specifically drafted to comply with *Higgs* and notes that the Eleventh

---

[2] The Eleventh Circuit, in *Higgs*, addressed an issue of first impression: namely, "how to calculate past medical expense damages in a maritime tort action where, as has become common, there is a dramatic disparity between the amount a healthcare provider bills a plaintiff for treatment and the amount her insurer actually pays the provider in satisfaction." *Higgs*, 969 F.3d at 1308.

Circuit's holding in *Higgs* took write offs into account in finding that a jury should consider all relevant evidence, including the amount billed and the amount paid, in determining the appropriate measure of past medical expense damages. Therefore, Defendant claims that, pursuant to *Higgs*, it is entitled to a set off for any amounts paid by third parties in connection with this action.

The Eleventh Circuit's opinion in *Higgs* addressed the appropriate calculation for past medical expense damages, in light of the significant deviation between the amounts paid versus amounts billed that have become common in modern healthcare, and held "that the appropriate measure of medical damages is a reasonable value determined by the jury upon consideration of all relevant evidence. Both the amount *billed* by healthcare providers and the amount *paid* by insurers are admissible as relevant to the question of fixing reasonable value." 969 F.3d at 1308.

Critically, in applying the collateral source rule to permit the introduction of evidence on the amount paid, the Eleventh Circuit rejected any bright-line cap to the calculation of medical damages based on the amount paid, and concluded instead that the jury should be presented with *all* relevant evidence in determining the reasonable value of the medical services received. *Id.* at 1314-16. Specifically, the *Higgs* Court emphasized:

> The resolution of this question turns on the construction of a principle of tort law known as the collateral source rule. The collateral source rule is both a substantive principle of damages and an evidentiary rule. In its substantive role, the collateral source rule provides that a plaintiff is entitled to recover the full value of the damages caused by a tortfeasor, without offset for any amounts received in compensation for the injury from a third party (like an insurance company or a family member). *See Bourque v. Diamond M. Drilling Co.*, 623 F.2d 351, 354 (5th Cir. 1980); Restatement (Second) of Torts § 920A(2) ("Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."). In its evidentiary role, the collateral source rule bars the admission of evidence of payments made by third parties. *Bourque*, 623 F.2d at 354 ("[T]he rule prohibits the introduction of evidence offered to show that [a plaintiff] already has been compensated for his injuries.").
> 
> The collateral source rule is thus an exception to the basic tort principle that damages are designed to make the plaintiff whole—the rule allows a plaintiff to

> recover damages for a harm for which she has already been compensated. In fact, it makes her more than whole. 25 C.J.S. *Damages* § 189 ("The collateral-source rule is an exception to the general rule of damages preventing a double recovery by an injured party, or in other words, it is an exception to the general rule that in a tort action, the measure of damages is that that will compensate and make the plaintiff whole."). But the law conceptualizes the collateral source payment as necessarily a windfall—after all, a party other than the victim or the alleged tortfeasor has voluntarily chosen to bear the costs of the victim's injury—that is better awarded to the plaintiff than the tortfeasor. *See Sweep v. Lear Jet Corp.*, 412 F.2d 457, 459 (5th Cir. 1969) (summarizing justifications for the collateral source rule). Moreover, the rule is understood to avoid discouraging plaintiffs from prudently paying for insurance by limiting their recoveries, and it deters negligence by punishing tortfeasors for the full amount of their wrongdoing. *Id.*
>
> It is also well established that the collateral source rule—both in its substantive and evidentiary roles—applies to maritime tort cases. *See Bourque*, 623 F.2d at 352, 354. Its proper application to contemporary medical expenses is a vexing question, however. *See McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1169 (D. Nev. 2014) ("As controversial as the collateral source rule is, whether the rule should apply to 'write-downs' is even more so."). It is uncontested that as a substantive, general matter, the collateral source rule applies to the calculation of Higgs's medical damages. That is, Higgs is entitled to recover medical damages over and above the amount she paid out of pocket, even though those costs were settled by her insurer. Both parties agree—as they must—that Higgs is entitled to recover some amount for which United Healthcare was solely responsible. Thus, in some real way, she is *going* to receive a windfall. The question before us is how much, and how that figure should be calculated.

*Id.* at 1310-11 (footnote omitted).

Additionally, while this method of computation necessarily contemplated introducing to the jury evidence of discounts or write offs made by third parties, it did not otherwise alter the basic principles that underlie the collateral source doctrine. *See id.* at 1316 ("In this way, admitting evidence of the paid amount—which could have been paid by the plaintiff (indeed, part of it was), the insurer, or anyone else—does not violate the letter or the spirit of the collateral source rule. It is simply a figure, described as the total actual amount of payment, that provides a benchmark for the jury's consideration of the reasonable value of a provider's medical services."). Ultimately, the "guiding principle is that plaintiffs are entitled to recover the reasonable value of treatment for

11

injuries they have sustained, regardless of whether their medical expenses have been paid and by whom." *Id.* at 1311.

The Eighth Affirmative Defense attempts to read *Higgs* in a manner that would permit a tortfeasor to set off payments made by third parties in order to reduce its own liability amount—a reading that is clearly contrary to *Higgs*'s holding and to the collateral source rule. As the Eleventh Circuit emphasized, "[i]n its substantive role, the collateral source rule provides that a plaintiff is entitled to recover the full value of the damages caused by a tortfeasor, *without offset for any amounts received in compensation for the injury from a third party* (like an insurance company or a family member)." *Id.* at 1310 (emphasis added). Furthermore, the jury's entitlement to consider evidence of a healthcare write-off in determining the reasonable value of a plaintiff's medical damages has no impact on a tortfeasor's ability to reduce its liability by amounts paid from collateral sources. "In other words, because the amount billed does not create a debt in any meaningful sense, the write-off is not a reduction of debt in any meaningful sense . . . ." *Id.* at 1315. Defendant's Eighth Affirmative Defense attempts "to circumvent the collateral source rule, which prohibits a tortfeasor from reducing its liability by any amount the plaintiff has received from other sources," *Najmyar*, 2017 WL 7796327, at *3, by alleging its purported entitlement to a set off for any amounts paid in this case by third parties. As such, the Court concludes that this defense must be stricken because it is clearly invalid as a matter of law. *See Microsoft Corp.*, 211 F.R.D. at 683. Therefore, the Court grants Plaintiffs' Motion.

**F.  Eleventh Affirmative Defense**

In the Eleventh Affirmative Defense, "Defendant alleges that the incident and injuries alleged in the Complaint were the result of intervening, independent, superseding and/or unforeseeable causes for which Defendant had no duty to protect Plaintiffs from." ECF No. [15]

at 16. Plaintiffs repeat their arguments presented on the First Affirmative Defense, noting that the defense presents insufficient, boilerplate language devoid of any factual allegations in support. Defendant contests the alleged insufficiency of this defense, especially at this early stage in litigation before the parties have had the opportunity to conduct discovery to determine issues of comparative fault or intervening events that caused Plaintiffs' injuries, and again argues that this defense provides adequate notice.

Similar to the Court's analysis regarding the First Affirmative Defense, the Eleventh Affirmative Defense makes clear that Defendant intends to raise issues regarding either comparative fault or superseding causes. Specifically, this defense provides adequate notice by alleging the existence of a superseding cause that "cut off any causal connection between [Defendant's] alleged negligence and [Plaintiffs'] injuries" *Wiegand v. Royal Caribbean Cruises Ltd.*, No. 19-cv-25100, 2020 WL 4187805, at *3 (S.D. Fla. July 20, 2020). "Under general federal maritime law, a superseding cause defense, if successful, completely exculpates the defendant of any liability in the matter." *Id.* (citing *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837-838 (1996)).

> The Eleventh Circuit has explained that "[r]equiring a defendant to plead certain defenses affirmatively serves the important purpose of providing notice to the plaintiff and the court." . . . The defendant is not required to "set out in detail the facts" upon which his affirmative defense is based; rather, he need only set forth a "short and plain statement" that will give "fair notice" of the defense and the "grounds upon which it rests."

*T.G. v. Sears, Roebuck & Co.*, No. 06-61228-CIV, 2006 WL 8432512, at *2 (S.D. Fla. Nov. 20, 2006).

Further, "[a]s to the lack of factual support, the Court will not strike this affirmative defense where the parties have not conducted discovery and only Plaintiff was present . . . at the time of the alleged injury. This affirmative defense is better challenged at summary judgment." *Iskandar*,

2018 WL 7463362, at *2. As such, Plaintiffs' Motion is denied as to Defendant's Eleventh Affirmative Defense.

### G. Twelfth Affirmative Defense

Finally, Defendant's Twelfth Affirmative Defense asserts that "Plaintiffs' Amended Complaint fails to state a cause of action upon which relief can be granted." ECF No. [15] at 16. An assertion that a pleading fails to state a claim is not a valid affirmative defense. *See Northrop & Johnson Holding Co., Inc.*, 2017 WL 5632041, at *3. "[F]ailure to state a claim is a defect in [a party]'s claim; it is not an additional set of facts that bar recovery notwithstanding [a party]'s valid prima facie case." *Boldstar Tech. LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007). However, in light of the disfavor with which courts view striking portions of pleadings, the Court will treat the Twelfth Affirmative Defense as a specific denial. *See JazAtlanta 519 LLC v. Beazley Underwriting, Ltd.*, No. 18-cv-60498, 2018 WL 4743634, at *2 (S.D. Fla. Oct. 2, 2018); *McMullen v. GEICO Indem. Co.*, No. 14-cv-62467, 2015 WL 11199534, at *3 (S.D. Fla. Jan. 13, 2015) (declining to strike defendant's "affirmative defense" that "Plaintiff's Complaint fails to state a cause of action upon which relief can be granted" and instead treating it as a specific denial); *see also Bluewater Trading LLC v. Willmar USA, Inc.*, No. 07-61284-CIV, 2008 WL 4179861, at *2 (S.D. Fla. Sept. 9, 2008); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1269 (3d ed. 2018). Thus, the Court denies Plaintiffs' Motion on this point.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion, **ECF No. [16]**, is **GRANTED in part and DENIED in part** as follows:

1. The Motion to Strike the First, Fifth, Eleventh, and Twelfth Affirmative Defenses is **DENIED**.

Case No. 20-cv-22783-BLOOM/Louis

2. The Seventh Affirmative Defense is **WITHDRAWN**.

3. The Second Affirmative Defense is **STRICKEN**.

4. The Eighth Affirmative Defense is **STRICKEN WITHOUT PREJUDICE**. Defendant may replead this defense consistent with this Court's discussion above on *Higgs* **by no later than November 12, 2020**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 4, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record